IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Jace Benjamin Cameron,<br><br>Plaintiff,<br>vs.<br><br>Camden Military Academy; Eric Boland, individually and as an employee of Camden Military Academy; C.H. Armstrong, individually and as an employee of Camden Military Academy; Vertis Wilder, individually and as an employee of Camden Military Academy; Denise Miles, individually and as an employee of Camden Military Academy; and John Richard, individually and as an employee of Camden Military Academy,<br><br>Defendants. | ) | C/A No.: 3:12-846-JFA<br><br>PRETRIAL ORDER NO. 2[1] |

This is an action by Jace B. Cameron against Camden Military Academy (CMA), a boarding school for grades seven through twelve that Cameron briefly attended, as well as three of the school's employees. The complaint sets forth a number of causes of action against the defendants arising out of Cameron's alleged abuse and alleged exposure to an unsafe, unhealthy environment while he was a cadet at CMA. The allegations include claims of physical assault (both by other cadets and by an individual employee of the school) and sexual assaults, to include rape and sodomy, by other cadets at CMA.

[1] The order on trial conduct entered on May 22, 2013 (ECF No. 145) will hereafter be referred to as Pretrial Order No. 1.

Although the complaint sets forth a number of causes of action, the principle claim in this case is that CMA is liable for plaintiff's injuries and damages, which include allegations of Post Traumatic Stress Disorder and other lingering problems associated with plaintiff's five-month stay at CMA. The plaintiff alleges that because CMA negligently failed to supervise staff and juveniles, a "culture of violence" at CMA resulted which led to plaintiff's physical and sexual abuse.

It is well-established that middle and high school boarding schools, such as CMA, have a duty under the law to take reasonable steps to ensure that students entrusted to its care are not subject to abuse by staff or other students. Relevant to this inquiry is evidence tending to show that abuse was widespread at CMA and that CMA knew or should have known of this abuse.

Plaintiff also alleges that, in addition to the culture of violence that existed at CMA, there existed a well-established policy—known to and enforced by the juveniles—not to report such conduct. The policy, generally reflected in the phrase "snitches get stitches," was allegedly repeated among the cadets at CMA. Plaintiff contends that both the culture of violence and the policy of non-reporting was known by and, in some instances, even encouraged by, CMA officials.

There exists in the record some direct evidence that school officials were aware of hazing or bullying occurring at CMA. For example, in a farewell report to the CMA Board of Trustees in 2003, the headmaster of the school reported to the Board that bullying was

occurring at CMA and was one of the reasons the school experienced significant dropouts each year.

Two years later, in furtherance of its re-accreditation efforts, CMA submitted a questionnaire to its cadets. Thirty-eight percent of the questionnaire respondents felt that bullying was a problem at CMA. Moreover, certain other evidence in the case indicates that CMA acknowledges that bullying did occur to some degree at the school.

Both parties have filed a number of motions in limine seeking to limit or exclude evidence proposed by the other side. One of the most critical of these motions is defendants' Pretrial Motion No. 3 (ECF Nos. 188, 189, 190, 191) to disallow testimony of cadets concerning alleged abuse, if that abuse was not reported to school officials. Defendants contend that, if the misconduct was not reported, school officials cannot be held responsible for such conduct. Because this issue is perhaps one of the most critical of the evidentiary issues presented in this case, the court intends, by way of this pretrial order, to set out its conclusions regarding the extent to which such testimony will be admitted during the trial of this case.

Both parties paint with a broad brush on this issue. Defendants contend that only episodes of misconduct that were in fact reported to a responsible official at CMA should be admissible. Plaintiff, on the other hand, contends that the culture of violence was so well known and well-established that the defendants "had to have known" about the misconduct. This court is of the opinion that a more nuanced approach is appropriate on this issue. In

other words, the testimony must be broken down into several distinct categories, some of which may be admissible and some which may not. These categories are:

Plaintiff's Witnesses:

(1) Testimony about a widespread practice among the student body of discouraging reporting ("snitches get stitches"): Testimony from former cadets that they were told about this policy or heard the policy discussed among other students will be admissible as it is relevant and not hearsay.

(2) Testimony by former cadets who say they were mistreated and reported the mistreatment to school officials: This testimony is clearly admissible.

(3) Testimony by former cadets who say they were mistreated, but did not report the mistreatment to school officials: This testimony will be admitted subject to a limiting instruction given at the beginning of each cadet's testimony. That limiting instruction will inform the jury that the testimony may be considered by the jury if the jury finds, from all the surrounding circumstances, that CMA "should have known" about the mistreatment. If, on the other hand, the jury does not find such attendant circumstantial evidence, the jury should disregard the evidence.

(4) Testimony by former cadets that the cadet personally witnessed the mistreatment of another cadet and reported the incident to CMA officials: This testimony will be admissible.

(5) Testimony by former cadets that the cadet witnessed another cadet being mistreated but did not report the incident to CMA officials: Same ruling as (3) above (Admitted subject to a limiting instruction to the jury giving them the discretion to consider the evidence if they find sufficient circumstantial guarantees that CMA "should have known" about the incident).

(6) Testimony by former cadets regarding hearsay allegations of mistreatment: In other words, cadet Jones hears cadet Smith say that Smith (or another cadet) was mistreated. This is classic hearsay. Jones testifies at trial and Smith's statement is offered for the truth of the matter asserted in the statement. If, however, Jones testifies that he reported the hearsay to CMA, the statement becomes non-hearsay, because it is not then offered for the truth of the matter asserted, but is instead offered to show the effect of the statement on the listener (i.e., CMA). *See*, *e.g.*, *Vinyard v. Vinyard Funeral Home, Inc.*, 435 S.W.2d 392 ( Mo. Ct. App. 1968) ("Evidence of complaints . . . made to defendant was relevant to the material issue of defendant's knowledge [and therefore not hearsay]"). For this reason, admissibility of this type of hearsay testimony will depend upon a precise showing that it was communicated to CMA. If it was not communicated, it is not admissible.

The court will specifically not allow generalized testimony that hazing, violence, sexual abuse, and the like were "so widespread and prevalent that school officials just had to know" of the cadet behavior. The court also rejects plaintiff's argument that such

testimony should be admissible to show the effect that the hearsay had upon the students who heard the statements, as that is not an issue in this case.

Defendants' Witnesses:

(1) Former cadets who testify that during their stay at CMA, they never saw anyone hazed or mistreated: This testimony will be admissible.

(2) Testimony by former cadets that they were never personally hazed or mistreated: This testimony will be admissible.

(3) Testimony by former cadets that they were not aware of a covert policy of discouraging reporting among cadets: This testimony will be admissible.

(4) Testimony by former cadets that they "never heard of" anyone being hazed or mistreated at CMA: This testimony will not be admissible inasmuch as this is negative hearsay. *See*, *e.g.*, *Smith v. Korn Industries, Inc.*, 262 S.E.2d 27 (S.C. 1980).

As noted above, many pretrial motions in limine have been filed in this case, all of which the court will consider prior to the commencement of trial. The issues raised in defendants' pretrial motion number 3, however, merit the extended discussion provided in this order so that there will be no misunderstanding about the court's intentions during the trial of this case. The court will strictly enforce the provisions of this order.

IT IS SO ORDERED.

June 11, 2013
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge